UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**ROY ANTHONY SINCLAIR** : **DOCKET NO. 13-cv-1982**
  **D.O.C. # 560926**

**VERSUS** : **JUDGE FOOTE**

**N. BURL CAIN** : **MAGISTRATE JUDGE KAY**

**REPORT AND RECOMMENDATION**

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Roy Anthony Sinclair ("petitioner") [doc 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. N. Burl Cain ("respondent"), former warden, opposes the application. Doc. 18.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

I.
BACKGROUND

*A. Conviction*

The petitioner was indicted in the Second Judicial District Court, Bienville, Parish, Louisiana, on January 31, 2002, on a charge of first degree murder.[1] Doc. 18, att. 11, p. 52. The

---

[1] The state reduced the charge to second degree murder by amended indictment filed on March 4, 2008. Doc. 18, att. 11, p. 50.

charge related to his assault on Charles Smith ("victim") on July 19, 2001. *State v. Sinclair*, 55 So.3d 47, 48 (La. Ct. App. 2d Cir. 2010). The victim was attacked in the store he operated and later died of complications from his injuries. *Id.* Following several delays, a jury trial commenced on September 21, 2009, and the petitioner was convicted of second degree murder. Doc. 18, att. 11, pp. 41–47. He was thereafter sentenced to life imprisonment without the possibility of parole, probation, or suspension of sentence. *Id.* at 48.

### B. Direct Appeal

The petitioner filed an appeal in the Louisiana Second Circuit Court of Appeal, raising the following assignments of error through counsel:

1. The trial court erred in failing to grant the defendant's motion to quash which was based upon the state's alleged failure to timely commence the trial.
2. The trial court erred in not suppressing the petitioner's July 23, 2001, statement.

*Sinclair*, 55 So.3d at 50–56. The Second Circuit reviewed both claims on the merits and denied relief. *Id.* The petitioner then sought review in the Louisiana Supreme Court, which denied the application April 29, 2011. *State v. Sinclair*, 62 So.3d 110 (La. 2011). He did not file a petition for certiorari in the United States Supreme Court. Doc. 1, p. 5.

### C. State Collateral Review

The petitioner filed an application for post-conviction relief with the trial court on April 12, 2012. Doc. 18, att. 5. There he raised the following claims:

1. Trial counsel was ineffective based on the following incidents:
   a. Allowing state's witness, Dr. Grigsby, to offer hearsay pertaining to another doctor's opinion.
   b. Not stating the reason for his objection to the state's use of the excited utterance hearsay exception.
   c. Allowing Dr. Hines to testify beyond his ability.
   d. Failing to object to state's case of cause of death without proper procedures pertaining to coroner's report.

      2. Appellate counsel was ineffective for failing to challenge on appeal the trial court's admission of hearsay statement as excited utterance.

Doc. 18, att. 23, pp. 187–88. The trial court reviewed his claims on the merits and denied relief. Doc. 18, att. 6, pp. 1–2. The petitioner sought review with the Second Circuit which denied relief on the merits. Doc. 18, att. 8, p. 2. The petitioner then sought review in the Louisiana Supreme Court, which denied same on March 1, 2013. *State ex rel. Sinclair v. State*, 108 So.3d 786 (La. 2013).

### D. Federal Habeas Petition

The instant petition was filed on June 20, 2013.[2] Doc. 1. The petitioner renewed all claims from his direct appeal and application for post-conviction relief. *Id.* at 2–4.

## II.
## LEGAL STANDARDS ON HABEAS REVIEW

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The

---

[2] The petitioner contends that the instant petition was filed on June 17, 2013, rather than June 20. Doc. 6, p. 13. However, there is no declaration or other indication of when the petitioner delivered the petition to the prison for mailing. *See* Doc. 1. Meanwhile, stamps show that the petition was received by the prison on June 20, 2013. *Id.* at 10. Accordingly, June 20, 2013, is the effective date of filing.

limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the instant petition was filed.

### B. Procedural Default and Exhaustion of State Court Remedies

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

#### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when

review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[3] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which

---

[3] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

he would be required to petition would now find the claims procedurally barred ("technical") procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. General Principles

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). A writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975 (2006).

### III.
#### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

*A. Timeliness*

Here the petitioner's conviction became final on July 29, 2011, when his time for seeking review in the United States Supreme Court expired. *See* Sup. Ct. R. 13. Accordingly, **258 days** accrued before his time limit was tolled by filing an application for post-conviction relief on April 12, 2012. The time limit remained tolled until the Louisiana Supreme Court's judgment on March 1, 2013, allowing an additional **111 days** to accrue before the instant petition was filed on June 20, 2013. Thus **369 days** have run against the petitioner's 365 day limit, making the instant petition untimely.

The respondent's failure to raise untimeliness as an affirmative defense does not prevent this court from considering the issue *sua sponte*, though we are not obligated to do so. *Day v. McDonough*, 126 S.Ct. 1675, 1682–84 (2006). The court should also "assure itself that the

-7-

petitioner is not significantly prejudiced by the delayed focus on the limitations issue, and 'determine whether the interests of justice would be better served' by addressing the merits or dismissing the petition as time-barred." *Id.* at 1684 (quoting *Granberry v. Greer*, 107 S.Ct. 1671, 1676 (1987)).

Given the length of time for which this suit has been pending, the brief amount by which the time limit was exceeded, the fact that all claims have been exhausted on the merits and fully briefed in this court, and the fact that the state completely overlooked the petition's untimeliness,[4] the interests of justice are better served by overlooking the four days by which the petitioner exceeded the statutory time limit.

### B. Exhaustion of State Court Remedies and Procedural Default

All of the petitioner's claims were exhausted in the state courts and decided there on the merits. Accordingly, these doctrines present no obstacle to review.

### C. Substantive Analysis

Having determined which claims are viable, we now review each under the standards enunciated above.

#### 1. The trial court erred in failing to grant the defendant's motion to quash, which was based upon the state's alleged failure to timely commence the trial.

The petitioner first complains that the trial court erred in failing to grant his Motion to Quash for failure to bring him to trial within the state statutory time limit. Federal consideration of such a claim is limited to whether the state's action violated petitioner's constitutional right to a speedy trial or to due process. *Lewis v. Warden, Winn Corr. Ctr. et al.*, 2014 WL 970197, *5–*6 (W.D. La. Mar. 12, 2014). Here the petitioner alleges that the delay violated his rights because it

---

[4] The petitioner contends that the mailing delay of a few days in receiving the Louisiana Supreme Court's 2013 decision was the cause of his petition's untimeliness. Doc. 6, pp. 12–13. Given that over three months passed between receipt of the Louisiana Supreme Court's decision and the filing of the instant petition, it is unlikely that this brief delay could justify equitable tolling, which requires a showing that the petitioner has been "pursuing his rights diligently." *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010).

prejudiced his defense and caused his attorney to "[lose] interest in the case and [stop] visiting him."[5] Doc. 19, att. 1, p. 2. This factor is addressed by the Supreme Court in its speedy trial analysis, which guides our consideration here. *Lewis*, 2014 WL 970197 at *6.

In determining if a defendant's right to a speedy trial has been violated, the Supreme Court considers the following factors relevant: (1) the length of the delay, (2) the reason for the delay, (3) the petitioner's assertion of his right to a speedy trial, and (4) prejudice to the petitioner. *Barker v. Wingo*, 92 S.Ct. 2182, 2192 (1972). None of these provides "a necessary or sufficient condition" to find a violation of the right to a speedy trial. *Id.* at 2193. Instead, they "must be considered together with such circumstances as may be relevant." *Id.*

The length of the delay operates as a "triggering mechanism" of sorts. *Id.* at 2192. Here nearly eight years passed between indictment and conviction. However, a review of the record shows that the majority of delays were attributable to the defense. The defense filed a motion for appointment of a sanity commission in January 2003, which halted proceedings until the petitioner was declared competent in August 2003. Doc. 18, att. 11, pp. 83, 24. Discovery and motions continued, with the trial date reset multiple times. *See id.* at 2–4 (chronological index of proceedings). While the record does not reveal the cause of some of the delays, we note motions to continue filed by the defense in July 2006 and May 2007. Doc. 18, att. 13, pp. 229, 233–34. The petitioner then filed notice that he had terminated his counsel because he could no longer afford representation in May 2007. *Id.* at 236. He also filed a motion to quash in June 2007, which was denied on the basis that the court had not yet accepted termination of his counsel. *Id.* at 237–39. New counsel was appointed and the defense filed a motion to quash and a motion to continue based on counsel's unavailability in June 2008. *Id.* at 246–48. The defense filed for and received further continuances in September 2008 and February 2009, while the state filed for a continuance in

---

[5] He also alleges numerous ways in which the refusal to grant the motion to quash violated Louisiana's Code of Criminal Procedure, but those allegations are outside of the scope of our review.

October 2008. Doc. 18, att. 19, pp. 118–19; *id.* at 123; *id.* at 133–34. Therefore, despite the long period between indictment and trial, the petitioner fails to establish that the state bore responsibility for any major part of the delay.

Under the prejudice factor, the Supreme Court has identified three interests: to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused, and to limit the possibility that the defense will be impaired. *Barker*, 92 S.Ct. at 2193. The petitioner alleges that he was prevented from establishing a meaningful defense by being "out of contact with his family and witnesses," and that the delay caused his attorney to lose interest in the case. However, he fails to identify which witnesses or evidence became unavailable as a result of the delay. A review of the record also shows continuous activity by defense counsel throughout the proceedings. As the petitioner fails to make allegations under the other factors, he has not established how he was actually prejudiced by the delay.

Finally, we note that the petitioner first attempted to assert his speedy trial rights by the motion to quash filed in June 2007 and then through counsel in June 2008. However, these assertions were not coupled with any behavior indicating a desire to see the case tried quickly, as the defense persisted in seeking continuances.

The balance of factors does not demonstrate constitutional error justifying federal *habeas* relief. Accordingly, the petitioner fails to carry his burden under this claim.

### 2. *The trial court erred in not suppressing the petitioner's July 23, 2001 statement.*

The petitioner alleges that his statement to police on July 23, 2001, was made in violation of his constitutional right against self-incrimination. A suspect undergoing a custodial interrogation must be informed of his right to counsel and right to remain silent. *See Miranda v. Arizona*, 86 S.Ct. 1602, 1624–25 (1966). If he asserts these rights at any point during the interrogation, questioning must cease. *Id.* at 1627. However, invocation of these rights must be

unambiguous and unequivocal. *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2259–60 (2010). A suspect cannot assert his right to remain silent merely by remaining silent for a given period of time. *Id.*

Here the petitioner first executed a written waiver of his *Miranda* rights at 12:44 am on July 20, 2001, shortly after his arrest. Doc. 18, att. 11, p. 86; doc. 18, att. 19 pp. 212–13. No interrogation took place during that initial encounter and the officer surmised from the petitioner's demeanor that he was not ready to talk. Doc. 18, att. 19, pp. 212–16. However, the petitioner never stated that he wished to have counsel present or that he wished to invoke his right to remain silent. *Id.* at 216–17.

Later that morning, another officer arrived to question the petitioner. *Id.* at 219–20. The petitioner executed another waiver of his *Miranda* rights and then completed a written exculpatory statement. *Id.* at 220–22; doc. 18, att. 11, pp. 68–69. Again, he made no assertion of his right to counsel or right to remain silent. Doc. 18, att. 19, pp. 220–21.

On July 23, 2001,[6] two other officers questioned the petitioner at the Bienville Parish jail. Doc. 18, att. 19, pp. 239–44. At this encounter the petitioner was orally advised of his *Miranda* rights and expressed that he wished to give a statement. *Id.* at 242; doc. 18, att. 20, pp. 26–27, 48. He made a brief statement to Victor Rogers, the chief of police, and was then sent to another officer to have his statement recorded. Doc. 18, att. 19, pp. 244–45. This encounter began at 9:36 am and the petitioner was once again orally advised of his rights. *Id.* at 224; doc. 18, att. 11, pp. 71–72. The petitioner made no assertion of his right to remain silent or to the presence of counsel. *Id.* at 225. He then submitted to an interview, in which he confessed to having committed the attack. *See* doc. 18, att. 11, pp. 71–77.

---

[6] The chief of the Arcadia Police Department, Victor Rogers, stated that this encounter took place on July 22, 2001. Doc. 18, att. 19, p. 241. However, he also stated that the interview took place on the Monday following the petitioner's arrest on Friday, July 20. *Id.* at 240. Therefore the reference to July 22 appears to be a simple miscalculation.

The petitioner argues that he invoked his right to remain silent at the initial encounter with police on July 20, and that his rights were therefore continually violated by the officers' subsequent approaches. However, the record shows no act or statement by the petitioner that could be construed as an unambiguous, unequivocal invocation of his *Miranda* rights. Accordingly, the officers did not violate the petitioner's rights when they interviewed him on July 23.

The petitioner also alleges that his July 23 statement should have been suppressed because it was involuntary. The Constitution prohibits states from securing convictions through involuntary confessions that are the product of coercive police conduct. *See, e.g.*, *Miller v. Fenton*, 106 S.Ct. 445, 449 (1985). Voluntariness is reviewed based on the totality of the circumstances. *Carter v. Johnson*, 131 F.3d 452, 461–62 (5th Cir. 1997). "Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession." *Id.* at 462. Promises or inducements by the state may be sufficiently coercive to taint the voluntariness of a confession. *United States v. Restrepo*, 994 F.2d 173, 184 (5th Cir. 1993). However, the existence of a promise does not, by itself, render a confession involuntary and is only a factor to consider in that determination. *Id.*

The petitioner now claims that the statements from his interview on July 23 were not freely and voluntarily made as he was intimidated by the police chief's presence and the small interrogation room in which this encounter occurred. At the hearing on the defense's motion to suppress these statements, the petitioner testified that no one forced him to give a statement or threatened him. Doc. 18, att. 20, pp. 39–40. Instead, the petitioner stated that his cooperation was based on the chief of police's statement that he would discuss a lighter sentence with the district attorney in exchange for the petitioner's cooperation. *Id.* Accordingly, the petitioner was only promised the possibility of leniency at the discretion of a third party. The absence of any threat

also deflates the petitioner's other claims of intimidation. Based on the totality of the circumstances, including the petitioner's awareness of his rights through the multiple *Miranda* warnings, there is no evidence of police conduct that was sufficiently coercive to render the confession involuntary.

Accordingly, the petitioner has failed to show any basis for suppressing his July 23 statement and is not entitled to *habeas* relief under this claim.

### 3. *Ineffective assistance of counsel*

The petitioner next claims that he was denied his constitutional right to counsel through several incidents of allegedly deficient performance by his attorneys at trial and on appeal.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

We review all of the alleged incidents under the above standard.

### a. *Trial counsel allowed state's witness, Dr. Grigsby, to offer hearsay pertaining to another doctor's opinion.*

The first alleged deficiency comes from trial counsel's failure to object to alleged hearsay offered by Dr. Benson Grigsby, a witness for the state. Grigsby treated the victim soon after the attack. Doc. 18, att. 22, pp. 44–45. After describing the victim's injuries and the treatment administered, Grigsby testified about the decision to transfer the victim from Lincoln General Hospital based on the severity of his case. *Id.* at 44–47. Although he initially spoke only of his own role in the decision to transfer during direct examination, he later offered that he had also consulted another physician. *Id.* at 49. At that point the defense properly objected to Grigsby relating the other physician's opinion and the court sustained the objection. *Id.* Accordingly, no hearsay was offered and the petitioner fails to show any deficiency under this claim.

The petitioner also requests an evidentiary hearing under this claim. No evidentiary hearing is required when the claim can be resolved on the existing record. *Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007). Here the record shows there is no merit to the petitioner's claim, and the petitioner presents no basis for calling that record into doubt. Accordingly, the request for a hearing is denied.

### b. *Excited utterance by victim*

The petitioner next alleges that his trial counsel was ineffective for failing to articulate the basis of his objection to the state's use of the excited utterance hearsay exception and that appellate counsel was ineffective for failing to challenge the trial court's admission of this statement.

At trial Mary Kilgore, a neighbor of the victim, testified that she encountered the victim shortly after the attack. Doc. 18, att. 21, pp. 228–30. She asked the victim who had attacked him. *Id.* at 231. Before she could relate his reply, defense counsel objected on the basis of hearsay. *Id.* at 232. The trial court then heard arguments from both attorneys outside of the presence of the jury. *Id.* The prosecutor asserted that the victim's statement fell within the excited utterance exception to hearsay, under Article 803(2) of the Louisiana Code of Evidence. *Id.* at 232–33.

Defense counsel responded that the statement was not an excited utterance but a response to Kilgore's question. *Id.* at 233. He stated that introduction of the statement would violate his client's constitutional rights to due process and confrontation of the witnesses against him. *Id.* He also raised the fact that Kilgore could not establish how much time had passed between the attack and her encounter. *Id.* at 234. The trial court then overruled the objection. *Id.*

The petitioner alleges that trial counsel's performance was deficient because counsel did not allege that the statement violated the principles set forth in *Crawford v. Washington*. In *Crawford* the Supreme Court held that a defendant's rights under the Confrontation Clause were violated when the prosecution introduced testimonial statements made by a witness who was not available to testify at trial. 124 S.Ct. 1354, 1355 (2004). The "testimonial" category encompasses a specific class of out-of-court statements, including police interrogation and ex parte examination. *Id.* at 1363–66. Sinclair offers no basis for extending this category to a response to the question of a witness who is not a state actor or an agent thereof.[7] Accordingly, *Crawford* is unpersuasive here and trial counsel did not perform deficiently for failing to argue its application.

The petitioner also alleges that his appellate counsel was ineffective for failing to raise the excited utterance admission as an assignment of error on appeal. It is well-established that appellate counsel "need not and should not raise every non-frivolous claim but, rather, may select from them in order to maximize the likelihood of success on appeal." *Blanton v. Quarterman*, 489 F.Supp.2d 621, 699 (W.D. Tex. 2007) (citations omitted). However, appellate counsel must conduct the relevant research and make an informed decision about what claims he will pursue on appeal. *Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2004).

---

[7] See *Davis v. Washington*, 126 S.Ct. 2266, 2274 n. 2 (2006), where the Supreme Court extended *Crawford* to 911 operators on the grounds that the operators were either law enforcement officers or agents of law enforcement officers within the scope of their duties. The respondent also points to *State v. Griffin*, 30 So.3d 1039 (La. Ct. App. 2d Cir. 2010), where the Second Circuit ruled that statements made by a beating victim in response to the questions of a witness who was not involved in law enforcement were properly admitted as excited utterances and that *Crawford* had no application.

The basis for the original objection outlined *supra* might have made provided non-frivolous grounds for appeal. The ineffective assistance claims were decided without benefit of an evidentiary hearing in the state courts. Therefore we are unable to determine that failure to raise the claim was a matter of strategy rather than deficient performance.

However, the petitioner's claim does not satisfy the prejudice prong of *Strickland*. He argues that the trial court erred in overruling the objection because the state had produced no evidence to show that the victim's statement fell within the excited utterance exception.[8] Although the time between the attack and the statement was not firmly established, Kilgore testified that the statements were made before the victim had received emergency assistance, that he was bleeding profusely, and that the victim's head "had been busted open" to the point where she "could see the meat coming out . . . ." Doc. 18, att. 21, pp. 228–31. Therefore it appears reasonably certain that the victim would have still been under the stress of the attack, meaning that the petitioner cannot establish that he would have prevailed on this claim had it been raised on appeal. Accordingly, the petitioner fails to show ineffective assistance by his appellate counsel.

### c. *Allowing Dr. Hines to testify beyond his ability*

The petitioner next alleges that his trial counsel was ineffective for allowing the state's expert, Dr. Carl Henry Hines, to testify "beyond his ability." Hines treated the victim at a nursing home to which he had been discharged in a vegetative state. Doc. 18, att. 22, pp. 83–84. Hines was accepted by the court as an expert in family practice medicine. *Id.* at 81–83.

Hines testified that the victim died of staphylococcal pneumonia resulting from his head injury and assault. *Id.* at 84–85. The petitioner notes that Hines, who signed the death certificate, did not perform an autopsy. *See id.* at 83–85. Therefore he asserts that Hines' determination that the pneumonia was ultimately caused by the assault exceeded his expertise.

---

[8] Under Louisiana law, an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." LA. CODE OF EVID. art. 803(2).

As the respondent asserts, Louisiana courts allow physicians to give opinions about the cause of a patient's condition based solely on the patient's history. *See, e.g.*, *Dinett v. Lakeside Hosp.*, 811 So.2d 116, 119 (La. Ct. App. 4th Cir. 2002) (finding that a trial court erred in excluding a treating physician's testimony, based on the patient's history, that she had acquired hepatitis C from a blood transfusion). The petitioner points to no contrary authority and therefore fails to show how Hines' determination exceeded his expertise. Accordingly, he has not fulfilled the first prong of *Strickland* by showing that counsel's failure to object was deficient performance. He is therefore not entitled to habeas relief under this claim.

The petitioner also requests an evidentiary hearing under this claim. No evidentiary hearing is required when the claim can be resolved on the existing record. *Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007). Here the record shows there is no merit to the petitioner's claim, and the petitioner presents no basis for calling that record into doubt. Accordingly, the request for a hearing is denied.

### d. *Failing to object to state's cause of death without proper procedures pertaining to coroner's report*

The petitioner also contends that trial counsel was ineffective for failing to object to the testimony of Dr. Frank Peretti. Peretti was accepted as an expert in the field of forensic pathology. Doc. 18, att. 22, pp. 94–95. He testified, based on review of the victim's medical records, that the victim died "as a result of multiple medical complications which [were] directly related to his assault." *Id.* at 95–96.

The petitioner asserts that Peretti should not have been able to offer an opinion about the victim's cause of death without conducting an autopsy. He cites two cases, *State v. Hopkins*, 42 So. 660 (La. 1906), and *State v. Winey*, 44 So.2d 115 (La. 1950), for the proposition that Louisiana law requires an autopsy to establish cause of death in homicide cases. Like respondent, we are unable to find any support for his claim under these cases. Accordingly, the petitioner shows no

basis for the objection he wanted his trial counsel to make and thus fails to satisfy the first prong of *Strickland*.

## IV.
### CONCLUSION

The petitioner has not shown that he is entitled to relief under any claim. Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 22nd day of June, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE